UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STAREVENTS, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 22-0380 (JDB) |
| SMALL BUISNESS ADMINISTRATION, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56, Defendants, the Small Business Administration ("SBA") and SBA Administrator Isabella Casillas Guzman (collectively, "Defendants"), respectfully move to dismiss or, in the alternative, for summary judgment on the amended complaint filed by Plaintiff, StarEvents, Inc. ("Plaintiff"). As set forth in the accompanying memorandum of points and authorities, Plaintiff's proposed unreasonable delay claim is subject to dismissal for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted because Plaintiff fails to establish that there has been unreasonable delay. In the alternative, Defendants are entitled to summary judgment as a matter of law for the same reasons. Finally, Plaintiff's constitutional claim fails because in substance it is merely a recharacterization of Plaintiff's unreasonable delay allegation that fails to state a plausible claim for relief. A statement of material undisputed facts and a proposed order are attached.

- 2 -

Dated: June 23, 2022
     Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  /s/ *Stephanie R. Johnson*
    STEPHANIE R. JOHNSON
    D.C. Bar # 1632338
    Assistant United States Attorney
    Civil Division
    601 D Street, NW
    Washington, DC 20530
    (202) 252-7874
    Stephanie.Johnson5@usdoj.gov

*Attorneys for the United States of America*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 2

    I.    SVOG Program Background ................................................................................ 2

    II.   SVOG Program Implementation and Operation.................................................. 3

    III.  Plaintiff's Application, Appeal, SBA's Denial, and SBA's Recission............................ 7

    IV.  Procedural History ........................................................................................... 7

LEGAL STANDARDS ................................................................................................... 8

    I.    Federal Rule of Civil Procedure 12(b)(1) .......................................................... 8

    II.   Federal Rule of Civil Procedure 12(b)(6) ……………………………………….9

    III.  Federal Rule of Civil Procedure 56 .................................................................. 9

ARGUMENT ................................................................................................................ 10

    I.    The Court Lacks Jurisdiction Over Plaintiff's Unreasonable Delay Claim, Which Also Fails to State a Claim Upon Which Relief May Be Granted. ................................... 10

        A.   *TRAC* Factors 1 and 2 ................................................................... 12

        B.   *TRAC* Factor 4 ............................................................................ 17

        C.   *TRAC* Factors 3 and 5 ................................................................. 18

        D.   *TRAC* Factor 6 ............................................................................ 18

    II.   Alternatively, Defendants are Entitled to Judgment on Plaintiff's Unreasonable Delay Claim.................................................................................................................... 19

    III.  Plaintiff's Artful Pleading of its Claim Under Count II as a Due Process Violation Should Not be Countenanced. ........................................................................................... 19

CONCLUSION............................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*,
495 F.3d 695 (D.C. Cir. 2007) ........................................................................................ 21

*Am. Biosci., Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ...................................................................................... 10

*Am. Nat'l Ins. Co v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) ........................................................................................ 8

*Am. Road & Transp. Builders Ass'n v. EPA*,
865 F. Supp. 2d 72 (D.D.C. 2012) .................................................................................. 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................... 9

*Ass'n of Private Sector Colls. & Univs. v. Duncan*,
110 F. Supp. 3d 176 (D.D.C. 2015) .................................................................................. 9

*Atchison v. United States Dist. Courts*,
190 F. Supp. 3d 78 (D.D.C. 2016) .................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................... 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................................... 9

*Chiayu Chang v. U.S. Citizenship & Immigr. Servs.*,
254 F. Supp. 3d 160 (D.D.C. 2017) ................................................................................ 21

*Clayton v. District of Columbia*,
931 F. Supp. 2d 192 (D.D.C. 2013) ................................................................................ 10

*Dallas Safari Club v. Bernhardt*,
Civ. A. No. 19-3696 (APM), 2021 WL 495078 (D.D.C. Feb. 9, 2021) ......................... 19

*Epsilon Electronics, Inc. v. Dep't of Treasury*,
857 F.3d 913 (D.C. Cir. 2017) ........................................................................................ 10

*Fares v. Smith*,
249 F. Supp. 3d 115 (D.D.C. 2017) ................................................................................ 20

*Ghadami v. Dep't of Homeland Sec.*,
Civ. A. No. 19-0397 (ABJ), 2020 U.S. Dist. LEXIS 47623, at *23 (D.D.C. March 19, 2020) 17

*Hegab v. Long*,
716 F.3d 790 (4th Cir. 2013) .......................................................................................... 20

*In re Am. Rivers & Idaho Rivers United*,
372 F.3d 413 (D.C. Cir. 2004) ........................................................................................ 13

*In re Barr Labs.*,
930 F.2d 72 (D.C. Cir. 1991) .......................................................................................... 17

*In re Bluewater Network and Ocean Advocates*,
234 F.3d 1305  (D.C. Cir. 2000) ..................................................................................... 16

*In re Core Commc'ns, Inc.*,
531 F.3d 849 (D.C. Cir. 2008) ........................................................................................ 17

*In re Sci. Applications Int'l Corp. ("SAIC") Backup Tape Data Theft Litig.*,
45 F. Supp. 3d 14 (D.D.C. 2014) ...................................................................................... 8

*In re United Mine Workers of Am. Int'l Union*,
   190 F.3d 545 (D.C. Cir. 1999) ........................................................................................ 12
*Jones v. Astrue*,
   Civ. A. No. 12-0946, 2012 WL 2308147 (D.D.C. June 11, 2012) .......................................... 22
*Liberty Fund v. Chao*,
   394 F. Supp. 2d 105 (D.D.C. 2005) ................................................................................... 18
*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................... 8
*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) .................................................................................................. 19, 21
*Mach Mining, LLC v. Sec'y of Labor*,
   809 F.3d 1259 (D.C. Cir. 2016) ....................................................................................... 10
*Marine Wholesale & Warehouse Co. v. United States*,
   315 F. Supp. 3d 498 (D.D.C. 2018) .................................................................................... 8
*Mashpee Wampanoag Tribal Council v. Norton*,
   336 F.3d 1094 (D.C. Cir. 2003) .................................................................................... 14, 17
*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affairs*,
   842 F. Supp. 2d 127 (D.D.C. 2012) ................................................................................... 19
*Nibber v. U.S. Citizenship & Immigr. Servs.*,
   Civ. A. No. 20-3207 (BAH), 2020 U.S. Dist. LEXIS 235099, at * 13 (D.D.C. 2020) ............ 10
*Norton v. S. Utah Wilderness All.,,*
   542 U.S. 55 (2004) ........................................................................................................ 20
*Papasan v. Allain*,
   478 U.S. 265 (1986) ........................................................................................................ 9
*Rattler v. Dep't of Health & Hum. Servs.*,
   Civ. A. No. 12-1427, 2012 WL 3757508 (D.D.C. Aug. 29, 2012) ........................................ 22
*Royer v. Fed. Bureau of Prisons*,
   933 F. Supp. 2d 170 (D.D.C. 2013) ................................................................................... 22
*Sarlak v. Pompeo*,
   Civ. A. No. 20-0035 (BAH), 2020 U.S. Dist. LEXIS 101881 ............................................... 17
*Tate v. Pompeo*,
   Civ. A. No. 20-3249 (BAH), 2021 WL 148394 (D.D.C. Jan. 16, 2021) ........................... 14, 18
*Telecommunications Research & Action Center ("TRAC") v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ..................................................................................... passim
*Trudeau v. Fed. Trade Comm'n*,
   456 F.3d 178 (D.C. Cir. 2006) ........................................................................................... 9
*United States Women's Chamber of Commerce v. SBA*,
   Civ. A. No. 04-1889 (RBW), 2005 U.S. Dist. LEXIS 32497 (D.D.C. Nov. 30, 2005) ....... 11-12
*Verma v. U.S. Citizenship & Immigr. Servs.*,
   Civ. A. No. 20-3419 (RDM), 2020 U.S. Dist. LEXIS 239157 (D.D.C. Dec. 18, 2020) .......... 13
*Viet. Veterans of Am. V. Shinseki*,
   599 F.3d 654 (D.C. Cir. 2010) ......................................................................................... 20

**Statutes**

5 U.S.C. § 555(b) .............................................................................................................. 10
5 U.S.C. § 706(2) .............................................................................................................. 10

15 U.S.C. § 634(b)(1) .................................................................................................. 11
15 U.S.C. § 9000a(b) ..................................................................................................... 2
15 U.S.C. § 9009a(1)(A) ................................................................................................ 4
15 U.S.C. § 9009a(d)(1) ..................................................................................... 8, 12, 21
P.L. 116-260 ................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 12 ................................................................................................... 1, 8, 9
Fed. R. Civ. P. 56 .................................................................................................... 9, 10

**Regulations**

13 C.F.R. Part 123 ......................................................................................................... 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STAREVENTS, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>SMALL BUISNESS ADMINISTRATION,<br>*et al.,*<br><br>*Defendants.* | Civil Action No. 22-0380 (JDB) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

StarEvents, Inc. ("Plaintiff") alleges that it is "a live performing arts organization operator that . . . has produced large festivals with live entertainment in Chicago, IL for thousands of attendees and has raised more than $15,000,000 for local non-profit organizations and businesses over the years." ECF No. 14 ("Am. Compl.") ¶ 11. Plaintiff originally sued Defendants the Small Business Administration ("SBA") and its Administrator, Isabella Casillas Guzman, in her official capacity (collectively, "Defendants"), under the Administrative Procedure Act ("APA"), alleging that SBA's denial of Plaintiff's application to receive funds under SBA's Shuttered Venue Operators Grant ("SVOG") program was (1) arbitrary and capricious (Count I); (2) contrary to the law (Count II); and (3) unsupported by substantial evidence (Count III). *See* ECF No. 3 ("Compl."). On May 23, 2022, after SBA rescinded its decision on May 13, 2022, *see* Am. Compl. ¶ 30, Plaintiff filed an amended complaint asserting an unreasonable delay claim under the APA and a due process challenge. *See generally* Am. Compl.

The Court should find that it lacks jurisdiction over Plaintiff's unreasonable delay claim and that Plaintiff fails to state a claim upon which relief may be granted because the pace of SBA issuing a new decision in this matter is not unreasonable as a matter of law under the factors identified in *Telecommunications Research & Action Center* ("*TRAC*") *v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).   Even if the Court were to assure itself of its jurisdiction to entertain Plaintiff's unreasonable delay claim and to find that Plaintiff's Amended Complaint was sufficient to survive dismissal, the Court should enter judgement for Defendants because there is no genuine dispute that the agency's pace has been reasonable.   Finally, the Court should find that Plaintiff's due process claim is foreclosed because it is merely a repackaging of Plaintiff's unreasonable delay claim that otherwise fails to state a claim upon which relief may be granted.   Accordingly, the Court should grant Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment.

## BACKGROUND

### I.    SVOG Program Background

Congress established the SVOG program through the Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act, which was later amended by the American Rescue Plan Act.  *See*  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/shuttered-venue-operators-grant#section-header-0 ("SBA Shuttered Venue Operators Grant") (last accessed March 23, 2022); P.L. 116-260, The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Division N, Title III of the Consolidated Appropriations Act, 2021, December 27, 2020).   The SVOG program is managed under SBA's Office of Disaster Assistance ("ODA"). 15 U.S.C. § 9000a(b).   ODA manages a number of disaster programs, *see* 13 C.F.R. Part 123, however, the SVOG program is a new program that ODA created and implemented essentially from scratch.   Since its inception in or about April 2021, the SVOG Program has awarded

- 2 -

approximately $14.23 billion in grants.  *See* SBA Shuttered Venue Operators Grant; *see also* Declaration of Matthew T. Stevens ("Stevens Decl."), at ¶ 4.

## II.    SVOG Program Implementation and Operation

The process to set up and implement this grant program in the midst of a global pandemic, making use of 100% telework staff and staff on loan from other federal agencies, spanned less than 90 days from the organization of the staff to the first date of award issuance.  Stevens Decl. ¶ 5. Since no comparable program existed at any federal agency, the SVOG program had to integrate guidance from a myriad of resources and refine processes and procedures to continuously improve systems to balance the desire to expedite disbursement of emergency funding to eligible entities against the duty to protect the integrity of SBA and the SVOG program from fraud and misuse of funds.  *Id*.

ODA's staffing resources are limited.  *Id*. ¶ 8.  In order to implement the SVOG program, ODA obtained approximately 500 reviewers, borrowed from other federal programs.  Over the life of the program (from about April 2021) personnel decreased to 180, as the borrowed staff were required to return to their original roles, or to assist in responding to other disasters.  For example, during a peak SVOG processing period, the SVOG program was forced to give up approximately 30 top performing staff members when they returned to their original assignments to perform work responsive to the 2021 hurricanes and wildfires.  *Id*.

The SVOG program began accepting applications on April 23, 2021.  *Id*. ¶ 9.  The first Notices of Award were issued on or about May 27, 2021, and initial processing of applications, with notices of final decisions concluded on or about February 7, 2022.  *Id*.  During this short timeframe, the SVOG program processed approximately 17,637 initial applications for SVOG grants, of which approximately 12,869 were awarded.  *See* "2022 Shuttered Venue Operators Grant         program         reports,"         https://www.sba.gov/sites/default/files/2022-

02/SVOG%20Public%20Report%20-%20Midday%2028%20Feb%202022-508.pdf (Feb. 28, 2022) (last accessed June 23, 2022). *Id.*

The SVOG application requires applicants to support their answers to eligibility questions with up to 10 documents uploaded per answer. *Id.* ¶ 10. Documents include copies of contracts, tax returns for 2019 and 2020, among other things, depending upon the entity type under which the applicant applied. *Id.* Adding to the complexity of the review, the SVOG statute identifies seven eligible entity types, *see* 15 U.S.C. § 9009a(1)(A), including, (i) Live Venue Operator, (ii) Live Venue Promoter, (iii) Live Performing Arts Organization Operator, (iv) Theatrical Producer, (v) Talent Representative, (vi) Motion Picture Theatre Operator, and (vii) Non-Profit Museum Operator. *Id.* ¶ 11. For each entity type, there are 17-26 eligibility criteria. *Id.* ¶ 12. For each eligibility criteria, the applicant is asked to upload documentation substantiating their eligibility. The Applicant may upload as many documents as it chooses. *Id.* Additionally, applicants must self-identify their entity type. *Id.* ¶ 13. Where an applicant has not met the eligibility criteria for their selected entity type, however, the SVOG program will evaluate whether the applicant meets the criteria for any other eligible entity type before making the final award determination. Where it is determined that the applicant qualifies as alternate eligible entity type, the applicant is treated as eligible. *Id.*

Beyond the processing of initial applications, an additional five processing streams occur in order to ensure that eligible entities receive the maximum award, including: Appeal, Reconsideration 1.0, Supplemental, Reconsideration 2.0, Reconsideration 2.5. *Id.* ¶ 16. Each entity that receives an award must then complete Monitoring, Audit, and Closeout ("MAC"), which can last 18 months or longer. *Id.* ¶ 17. The SVOG program has a staff of approximately 180 which actively manages 400 open evaluations in the formal processing stages which require

- 4 -

manual review. *Id.* ¶ 18. The approximate numbers for the formal processing stages are: Appeals (7), Supplemental Awards (3), Reconsideration 1.0 (0), Reconsideration 2.0 (12), and Reconsideration 2.5 (4). *Id.* ¶ 19. In addition, the SVOG program is also responsible for performing program integrity reviews, including requests for re-evaluations of declined applications from non-formal avenues as well as SBA's General Counsel in connection with complaints that have been filed against the Agency. *Id.* ¶ 20. The number of re-evaluations for which a special team is responsible has grown significantly over the past several months. *Id.* ¶ 24. For example, since January 2022, the special team was tasked with re-evaluating, at least once per week, requests for application re-evaluation where the applicant named multiple alleged competitors or similar companies that received awards. *Id.* These allegations (inquiries) necessitate review of, on average, 20 - 30 "competitors." In recent weeks, the frequency of such inquiries has risen to about 2-3 per week. *Id.*

The amount of work involved in an internal re-evaluation can be significant and can take anywhere from two hours to multiple workdays, depending on the complexity of the application, *e.g.*, affiliate groups or entities with multiple income streams that require a more detailed analysis of whether the Principal Business Activity qualifies under the statute. *Id.* ¶ 27. The SVOG program office believes that such detailed analysis is necessary when questions arise about the award decision because of SBA's duty to ensure program integrity against misuse or misappropriation of funds. *Id.* For matters where an applicant has alleged disparate treatment as compared to entities it believes are substantially similar, those entities named by the applicant must also be re-evaluated to ensure that there was not in fact disparate treatment. *Id.* These comparative analyses are extremely burdensome, as the process can take a long time with a very small staff to accomplish these tasks. *Id.*

- 5 -

For example, when one "convention" type business named five awarded entities it alleged were substantially similar, the comparative review and analysis took an SVOG program office staff member approximately 65 working hours to complete the review and analysis. *Id.* ¶ 28. Where a comparative review and analysis determines that one of the named entities has been improperly awarded, the Program refers the awardee for inclusion in the Agency's process to recover repayment of improper awards because allowing the improper award to stand would be a misappropriation/misuse of grant funds. *Id.*

SBA has also created a Program Integrity team consisting of 6 staff members and, as of June 23, 2022, this Team had approximately 250-300 applications pending re-evaluations in its queue, including those connected to federal district court litigation. *Id.* ¶ 34. Since September 2021, approximately 63 federal District Court complaints have been filed in connection with denial of SVOG awards and there are often court-imposed deadlines associated with this active litigation. *Id.* ¶ 31. The number of these complaints have grown significantly since September 2021, from approximately 7 complaints in or around September 2021, to approximately 14 complaints by the end of November 2021, to approximately 32 complaints by the end of December 2021, to approximately 48 complaints by the end of February 2022 and to approximately 63 as of April 20, 2022. *Id.* ¶ 31.

Initially, the SVOG program office endeavored to give priority consideration to re-evaluations of applications in litigation, due to pending litigation deadlines (not present in other requests); it is no longer able to continue this endeavor given the substantial increase in litigation and other requests for re-evaluations coming from sources such as Congressional inquiries, customer service contacts, etc. *Id.* ¶ 32. Therefore, the Program must consider such re-evaluations on a first-in, first-processed approach, subject to emergencies that may affect SBA's management

and administration of the program. *Id.* Where a litigation deadline is present and an initial assessment does not conclusively indicate that an award is appropriate, a formal re-evaluation and new decision is conducted in accordance with the Program Integrity team's standard queue for evaluations, which takes urgent priorities into consideration, but is generally conducted on a first-in, first-processed basis. *Id.* ¶ 33. The rescinded application in the instant case is subject to the first-in, first-processed approach. *Id.* ¶ 35.

### III.    Plaintiff's Application, SBA's Denial, and Plaintiff's Appeal

On April 26, 2021, Plaintiff applied for a SVOG of $602,365.50, maintaining that it is a "live venue operator or promoter, theatrical producer, or live performing arts organization operator" that satisfies the requirements for receipt of SVOG funds. Am. Compl. ¶¶ 22, 23. SBA denied Plaintiff's application. *Id.* ¶ 24.

On September 9, 2021, Plaintiff appealed SBA's determination. *Id.* ¶ 25. On November 8, 2021, SBA denied Plaintiff's appeal because Plaintiff "did not meet the principal business activity standard." *Id.* ¶ 27; *see also* Compl ¶ 26.

### IV.    Procedural History

On February 14, 2022, Plaintiff first commenced this action against Defendants under the APA alleging "StarEvents demonstrated its eligibility for a SVOG award in its application to the SBA and, following an initial denial, its appeal to the SBA" and that SBA's explanation for StarEvents's denial "is completely conclusory and sheds no light on the true reason for the denial." Compl. ¶ 3.

On May 13, 2022, SBA rescinded its challenged decision. Am Compl. ¶ 30. Ten days later, Plaintiff filed an Amended Complaint, on May 23, 2022. *See* ECF No. 14. In its amended complaint, Plaintiff alleges that Defendants' "failure to decide StarEvents's SVOG application in a reasonable time frame, including by December 31, 2021, constitutes unreasonable delay." Am.

Compl. ¶ 39. The amended complaint further alleges that certain statutory deadlines limiting the use of award funds to costs incurred as of December 31, 2021, are unenforceable as applied to StarEvents because, they would violate the Due Process Clause of the Fifth Amendment. *Id*. ¶¶ 31-47. Plaintiff requests that the Court enter orders: (1) "compelling Defendants to decide StarEvents's SVOG award application by a date certain and as soon as possible" and "declaring that the statutory deadlines in 15 U.S.C. § 9009a(d)(1) are unenforceable as applied to StarEvents" as such application of these deadlines to Plaintiff "would violate the Due Process Clause of the Fifth Amendment." *Id*. at Prayer for Relief ¶¶ 1-2.

## LEGAL STANDARDS

### I.   <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court must dismiss a case in the absence of a plaintiff proving, in response to a motion to dismiss for lack of subject matter jurisdiction, that the Court has jurisdiction to hear his claims. *Marine Wholesale & Warehouse Co. v. United States*, 315 F. Supp. 3d 498, 508-09 (D.D.C. 2018); *In re Sci. Applications Int'l Corp. ("SAIC") Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 22 (D.D.C. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (other citation omitted). "When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions.'" *Marine Wholesale*, 315 F. Supp. 3d at 509 (quoting *Am. Nat'l Ins. Co v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)) (other citation and internal quotation marks omitted). "The Court need not accept as true, however, 'a legal conclusion couched as a factual allegation,' nor an inference unsupported by the facts set forth in the Complaint." *SAIC*,

45 F. Supp. 3d at 22 (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (other citation omitted).

## II.      Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  A court is not, however, required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## III.     Federal Rule of Civil Procedure 56

Summary judgment is appropriate when the pleadings and the evidence demonstrate that there "is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Generally, the party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Whereas here, however, where a plaintiff challenges agency action under the APA, a district court "sits as an appellate tribunal" and "[t]he entire case on review is a question of law."  *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 110 F. Supp. 3d 176, 184

(D.D.C. 2015) (quoting *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). "And that question of law is: based on the record, did the agency act in an 'arbitrary' or 'capricious' manner or otherwise violate the law?" *Id*. (citing 5 U.S.C. § 706(2)). "Under that standard, [courts] will uphold agency findings that are supported by substantial evidence, even if [the court] might have reached a different conclusion in the first instance." *Epsilon Electronics, Inc. v. Dep't of Treasury,* 857 F.3d 913, 918 (D.C. Cir. 2017). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support the [agency's] conclusion." *Mach Mining, LLC v. Sec'y of Labor*, 809 F.3d 1259, 1263 (D.C. Cir. 2016).

## ARGUMENT

I.     **The Court Lacks Jurisdiction Over Plaintiff's Unreasonable Delay Claim, Which Also Fails to State A Claim Upon Which Relief May Be Granted.**

"The APA requires agencies to 'proceed to conclude a matter presented to [them]' in a 'reasonable time,' 5 U.S.C. § 555(b), and authorizes reviewing courts to 'compel agency action unlawfully withheld or unreasonably delayed[.]'" *Nibber v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 20-3207 (BAH), 2020 U.S. Dist. LEXIS 235099, at * 13 (D.D.C. 2020) (quoting 5 U.S.C. § 706(1)). Nevertheless, the relief that Plaintiff seeks with its unreasonable delay claim, an order compelling a decision, if granted, would have the same impact as an injunction and is barred by the doctrine of sovereign immunity.

"Sovereign immunity shields the federal government and its agencies from suit and is 'jurisdictional in nature.'" *Atchison v. United States Dist. Courts*, 190 F. Supp. 3d 78, 88 (D.D.C. 2016) (quoting *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79 (D.D.C. 2012)) (other citation omitted). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Id*. (quoting *Clayton v.*

*District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013)) (other citation omitted).  Under the

no-injunction provision of 15 U.S.C. § 634(b)(1), the SBA Administrator may:

> sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property[.]

"However, the issuance of injunctive relief against the defendants is not barred by the 'no-injunction provision of 15 U.S.C. § 634(b)(1), if the Administrator acted outside the scope of [her] authority."  *United States Women's Chamber of Commerce v. SBA*, Civ. A. No. 04-1889 (RBW), 2005 U.S. Dist. LEXIS 32497, at *51 (D.D.C. Nov. 30, 2005) (citations omitted).  Specifically, an Administrator acts outside of her authority where there is unreasonable delay and "it is necessary that this Court only examine the facts to determine if the delay is sufficiently unreasonable to defeat the anti-injunction provision of the Small Business Act."  *Id*. at *53.

The Circuit has made clear that the threshold to obtain relief for alleged unreasonable delay "to be a high one": a Plaintiff must establish that an agency's delay is "so egregious as to warrant mandamus."  *Telecommunications Research & Action Center*, *FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) (*TRAC*).

The six factors the Circuit articulated in *TRAC* guides a Court's analysis of whether an agency's delay has been unreasonable.  Those factors are:

(1)    the time agencies take to make decisions must be governed by a rule of reason;

(2)    where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)    delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

- 11 -

(4)     the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)     the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)     the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted).  Applying the *TRAC* factors here makes clear that any alleged delay is not unreasonable.[1]

A.     *TRAC* Factors 1 and 2

The first and second *TRAC* factors ask whether the length of time for the agency to act is governed by a "rule of reason," under which the Court considers whether the time for agency action has been reasonable, as informed by any specific timetable established by Congress.  *See In re United Mine Workers of Am. Int'l Union*, 190 F.3d at 549.

The Circuit "has 'directed [this] court [in delay challenge cases] to ascertain the length of time that has elapsed since the agency came under a duty to act.'"  *United States Women's Chamber of Commerce*, Civ. A. No. 04-1889 (RBW), 2005 U.S. Dist. LEXIS 32497, at *58.  In this case, to the extent Plaintiff suggests that the December 31, 2021, deadline included in 15 U.S.C. § 9009a(d)(1)(A)(i) is the date the Court should use to discern when SBA came under a duty to act, Plaintiff is mistaken.  As Plaintiff acknowledges, that deadline pertains to the date by which an eligible entity can incur costs for which SVOG funds for an initial award may be used.

---

[1]     To the extent the Court considers the Stevens Declaration in support of Defendants' argument that the delay here, if any, is not unreasonable, Defendants' motion must be converted into one for summary judgment.  The Court may, however, conclude without relying on the Stevens Declaration that Plaintiff's allegation that a 10-day delay constitutes an actionable delay under the APA fails to plausibly state a claim for relief, and may in that circumstance dismiss pursuant to Rule 12(b)(6).

Am. Compl. ¶¶ 15, 36. And, in any event, even though Plaintiff's Amended Complaint does not provide precise dates, Plaintiff appears to concede that SBA decided its SVOG application on a date between April 26, 2021, and September 9, 2021, and affirmed its decision on appeal on November 27, 2021, which served as the basis for Plaintiff instituting this APA lawsuit, alleging that SBA's decision was arbitrary and capricious. Am. Compl. ¶¶ 22, 24-25, 27. These facts show that the SBA reasonably acted on Plaintiff's SVOG application and appeal. Thus, SBA did not come under a duty to act further until SBA rescinded its initial decision on May 13, 2022, to further examine the allegations Plaintiff raised in this lawsuit. Nevertheless, a mere 10 days after the rescission, Plaintiff amended the complaint to allege unreasonable delay. *See* Am. Compl. (filed on May 23, 2022).

There is no statutory or regulatory timeframe within which SBA must re-review Plaintiff's application for SVOG funds and Defendant is unaware of a single authority supporting the allegation that a 10-day delay in a similar circumstance is unreasonable. The Circuit has concluded that "a reasonable time for agency action is typically counted in weeks or months[.]" *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004). Under that rubric, May 13, 2022 (the date of rescission of SBA's initial decision) until May 23, 2022 (the date of the amended complaint) is not egregious as SBA is conducting its review on a "first-in first-processed approach, subject to emergencies that may affect SBA's management and administration of the [SVOG] program," Stevens Decl., at ¶¶ 32, 33, 35, and courts in this jurisdiction have consistently considered a first-in first-out review approach a "rule of reason" in the immigration context, *see Verma v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 20-3419 (RDM), 2020 U.S. Dist. LEXIS

239157, at *14 (D.D.C. Dec. 18, 2020) (citing cases).  The Court should do the same here where SBA has similar competing obligations. [2]

Indeed, "[w]hether a 'rule of reason' exists for agency action . . . depend[s] in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Tate v. Pompeo*, Civ. A. No. 20-3249 (BAH), 2021 WL 148394, at *10 (D.D.C. Jan. 16, 2021) (quoting *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

Matthew T. Stevens, Director of the SVOG Program, explains in his declaration filed in support of the Agency's request for a stay that "[t]he amount of work involved in an internal re-evaluation can be significant and can take anywhere from two hours to multiple workdays, dependent on the complexity of the application, *e.g.*, affiliate groups or entities with multiple income streams that require a more detailed analysis of whether the Principal Business Activity qualifies under the [applicable] statute."  Stevens Decl. ¶ 27.  "For matters where an applicant has alleged disparate treatment as compared to entities it believes are substantially similar, those entities named by the applicant must also be re-evaluated to ensure that there was not in fact disparate treatment."  *Id*.  "These comparative analyses are extremely burdensome, as the process can take a long time with a very small staff to accomplish these tasks."  *Id*.  As an example, where a "business named five entities it alleged were substantially similar, the comparative review and analysis took a[] SVOG program office staff member approximately 65 working hours to complete the review and analysis."  *Id*. ¶ 28.

---

[2]    Even if today were included in the calculation, a mere 41 days from the rescission on May 13, 2022, does not constitute an unreasonable delay under the law.

The resources available to the agency to complete re-evaluations are limited given the SVOG program's competing obligations. As discussed *supra*, "[t]he SVOG program is managed under SBA's ODA." *Id*. ¶ 4. "In order to implement the SVOG program, ODA obtained approximately 500 reviewers, borrowed from other federal programs." *Id*. ¶ 8. The personnel have since "decreased to 180, as the borrowed staff were required to return to their original roles, or to assist in responding to other disasters" such as "the 2021 hurricanes and wildfires." *Id*. "[W]hile SBA has awarded $14.23 billion in SVOG funds, approximately $2.0 billion remains available to be awarded, and the complex journey of monitoring, audit and closeout for the 12,869 (and growing) grantees is only just beginning," *id*. ¶ 7, which can last for 18 months or longer for each grantee, *id*. ¶ 17.

In addition to "processing the initial applications, there are five processing streams designed to ensure that eligible entities receive the maximum award": (1) appeal by a declined applicant (there are approximately 7 appeals pending); (2) supplemental award consideration, where SVOG staff considers an applicant's request for a supplemental award (there are approximately 3 requests for supplemental awards pending); (3) reconsideration 1.0, where staff review awards more than $100 less than the applicant's requested award (there are approximately 0 reconsideration-1.0s pending); (4) reconsideration 2.0, where SVOG staff review additional financial documents submitted by a SVOG awardee who requests additional consideration to determine whether all award and disbursements were accurate (there are approximately 12 reconsideration 2.0s pending); and (5) reconsideration 2.5, where SVOG staff review additional documents submitted by SVOG awardees to determine whether the awardee is entitled to a supplemental award based on expanded supplemental award criteria (there are approximately 4 reconsideration 2.5s pending). *Id*. ¶¶ 16, 19.

Moreover, "the SVOG program is . . . responsible for performing program integrity reviews, including requests for re-reviews of declined applications from non-formal avenues, such as congressional inquiries and customer service contacts, as well as SBA's Office of General Counsel, in connection with complaints that have been filed against the Agency." *Id*. ¶ 20. In this regard, the SBA "created a Program Integrity team consisting of 4 Subject Matter Experts and 2 Quality Assurance staff members, identified as the highest performing subject matter experts, . . . to conduct internal re-reviews[.]" *Id*. ¶ 22. "[S]ince January 2022, the special team was tasked with re-evaluating, at least once per week, requests for application re-reviews where the applicant named multiple alleged competitors or similar companies that received awards." *Id*. ¶ 24. That number has risen to "2-3 per week" in recent weeks. *Id*.

Further, as relevant here, "since September 2021, approximately 63 federal complaints have been filed in connection with denial of SVOG awards" and "[i]n many of the complaints, the plaintiffs allege that the Agency arbitrarily declined their applications on the basis that the awards were made to their competitors or similarly situated companies[.]". *Id*. ¶ 30. "The Program Integrity team, which consists of 4 Subject Matter Experts, and 2 Quality Assurance staff members, currently has approximately 250-300 applications pending re-reviews in its queue, including those connected to litigation brought in federal district courts across the country." *Id*. ¶ 34. Although SBA initially attempted to give priority consideration to applications in litigation that required reconsideration, its resources no longer permit it to do so and the SBA has commenced reviewing those applications that require reconsideration on a "first-in first-processed approach, subject to emergencies that may affect SBA's management and administration of the program." *Id*. ¶ 32.

In short, a review of the factual circumstances surrounding the SBA's efforts in this matter confirms that there has been no "transparent violation[ ] of a clear duty to act[,] *In re Bluewater*

*Network and Ocean Advocates*, 234 F.3d 1305 1315 (D.C. Cir. 2000), or delay "so egregious as to warrant mandamus[,]" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  As such, the first two *TRAC* factors weigh in Defendants' favor.

### B.    *TRAC* Factor 4

The fourth *TRAC* factor—the effect of granting relief on the agency's competing priorities—carries significant weight, *see Mashpee Wampanoag*, 336 F.3d at 1100, and weighs heavily in Defendants' favor as Plaintiff asks this Court to interfere with SBA's competing priorities discussed above.  Under this Circuit's precedent, a court will not compel agency action under such circumstances.  *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."); *Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 U.S. Dist. LEXIS 101881, at *19 (finding that the fourth factor weighed in the government's favor because expediting the plaintiff's waiver would harm other agency activities of equal or greater priority); *Ghadami v. Dep't of Homeland Sec.*, Civ. A. No. 19-0397 (ABJ), 2020 U.S. Dist. LEXIS 47623, at *23 (D.D.C. March 19, 2020) (finding that "expediting review in [plaintiff's] case would merely direct government resources from the adjudication of other waiver applications").  Mandamus relief is inappropriate in this context.[3]

To be sure, Plaintiff may argue that this case presents only one request for SVOG funds, which would not fundamentally interfere with SBA's competing priorities if the Court were to grant Plaintiff's requested relief.  But the Court should not struggle to cast this argument aside.

---

[3]    Although Plaintiff's amended complaint does not specifically include a request for mandamus relief, its "Prayer for Relief" essentially seeks that relief.  Notably, Plaintiff particularly requests that this Court "[e]nter an order compelling Defendants to decide StarEvents's SVOG award application by a date certain and as soon as possible." Am. Compl., "Prayer for Relief" ¶ 1.

This *TRAC* factor nonetheless favors the SBA because "[w]hile the effect of an individual case would be minimal, the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 2021 WL 148394, at *11. Thus, "[t]his factor heavily favors defendants' position." *Id.*

C.    ***TRAC* Factors 3 and 5**

"The third and fifth [*TRAC*] factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Here, Defendants understand that Plaintiff claims that the delay in SBA issuing a new decision will have a profound impacted on its finances because Plaintiff will not be able to incur expenses that it can use to apply for a supplemental SVOG grant award and to compete in a competitive industry. *See generally* Am. Compl. Plaintiff's argument, however, rests entirely on its sheer speculation that Plaintiff is eligible for SVOG funds even though it has failed to demonstrate its entitlement with evidence previously submitted to support its SVOG application and appeal.

"Even assuming that there is a substantial economic impact . . . , it is unlikely to rise to a level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." *See Liberty Fund*, 394 F. Supp. 2d at 118.    Thus, the third and fifth factors weigh in Defendants' favor. *See generally* Am. Compl. *TRAC* Factor 6

The sixth and final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. In its amended complaint, Plaintiff does not allege bad faith on the part of Defendants and alleges at most that SBA should be forced to move quicker to reach a decision.

- 18 -

*See generally* Am. Compl. While that may be Plaintiff's belief, it is not proof of impropriety or bad faith. Thus, at best, the sixth factor should be weighed as neutral.

## II.    Alternatively, Defendants are Entitled to Judgment on Plaintiff's Unreasonable Delay Claim.

Even assuming that the Court were to determine that it has subject matter jurisdiction to entertain Plaintiff's unreasonable delay claim, and that Plaintiff's Amended Complaint plausibly alleges a claim upon which relief may be granted, the Court should still find that Defendants are entitled to judgment against Plaintiffs because the *TRAC* factors weigh in Defendants' favor for the reasons explained in Section I above.[4]

## III.    Plaintiff's Artful Pleading of its Claim Under Count II as a Due Process Violation Should Not be Countenanced.

As an initial matter, it is unclear whether Plaintiff purports to raise a substantive or procedural due process challenge in its Amended Complaint. Regardless, Plaintiff's as-applied due process claim should be dismissed.

Plaintiff attempts to circumvent the prohibition on broad programmatic challenges under the APA, *see Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891 (1990) (holding that a Plaintiff

---

[4]    Lastly, although Plaintiff brings an APA claim, the basis for Plaintiff's challenge is not final agency action, but rather agency inaction. Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply. *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, Civ. A. No. 19-3696 (APM), 2021 WL 495078, at *3 (D.D.C. Feb. 9, 2021) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment). Moreover, the production of an administrative record at this stage is unnecessary—the Agency seeks to dismiss this case not based on an administrative record, but instead based on the facts alleged in the complaint and the present status of the SVOG application. *See generally Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review.") (citing *TRAC,* 750 F.2d at 79).

"cannot seek wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64-65 (2004), by fashioning its claim as a constitutional violation. *See* Am. Compl. ¶¶ 41-47. Courts have rejected such artful pleading efforts where the constitutional analysis is identical to the APA analysis. *See Fares v. Smith*, 249 F. Supp. 3d 115, 120 (D.D.C. 2017), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018) ("[T]he Court observes that its resolution of whether Defendants have provided sufficient notice under the Due Process Clause and the APA would be identical."); *see also Hegab v. Long*, 716 F.3d 790, 797 (4th Cir. 2013) ("Hegab's constitutional claims are in substance merely creative recharacterizations of his allegation that the [agency] made the wrong decision and that its decision was irrational and unsupported by the evidence.").

Here, both Plaintiff's APA unreasonable delay and due process claim rest on the incorrect assertion that the SBA was required to decide applications by December 31, 2021. Both claims are also premised on Plaintiff's factually incorrect assertion that Plaintiff, unlike its competitors, did not receive a decision on its SVOG application before December 31, 2021. *See* Am. Compl. ¶ 45 ("the overwhelming majority of SVOG claimants, including StarEvents' competitors, did not face such a difficult choice because they received their decisions and awards well before the first statutory deadline applicable to incurring eligible costs of December 31, 2021"). But it is undisputed that the SBA did issue a decision before December 2021. *Id.* ¶¶ 22-27. The due process claim, therefore, is in substance merely a recharacterization of the unreasonable delay claim, and the analysis of the two claims would be nearly identical.

Courts have also frowned upon attempts by plaintiffs to use constitutional claims to avoid the strictures Congress imposed on APA litigation. *See, e.g.*, *Viet. Veterans of Am. V. Shinseki*,

- 20 -

599 F.3d 654 (D.C. Cir. 2010) (refusing to allow plaintiffs to pursue due process claims in district court when, under the APA, the plaintiffs' identical unreasonable delay claims under Section 706(2) of the APA was barred due to an adequate alternative remedy); *Chiayu Chang v. U.S. Citizenship & Immigr. Servs.*, 254 F. Supp. 3d 160 (D.D.C. 2017) (refusing to allow plaintiffs to conduct discovery in support of a constitutional claim where discovery was not permitted under nearly identical APA claims).

Here, Plaintiff's request for relief—that the Court enter an order that the application of the statutory deadlines in 15 U.S.C. § 9009a(d)(1) violates the due process clause of the Fifth Amendment ("Prayer for Relief," ¶ 2)—is a programmatic challenge that courts have routinely found to be unreviewable under the APA. *See Lujan*, 497 U.S. at 891; *SUWA*, 542 U.S. at 64-66. As recognized by the *Lujan* court, a plaintiff "cannot seek wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan*, 497 U.S. at 891. The Court should not allow a programmatic challenge to proceed under the Due Process Clause that would otherwise be prohibited if brought as an APA challenge.

Lastly, even were the Court to examine Plaintiff's due process claim, it fails. To the extent Plaintiff's due process claims is premised on the Substantive Due Process Clause it is frivolous as the issues in this case concern money purported owed under a statute, not a fundamental right due under the Constitution. *See generally Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 701 (D.C. Cir. 2007) (discussing substantive due process claim and requirement for claim to implicate a fundamental right).

Equally untenable is any claim based on the Equal Protection component of the Fifth Amendment. Plaintiff appears to argue that the Government has no rational basis for treating

Plaintiff different than those that received SVOG approval before December 31, 2021. Am. Compl. ¶¶ 44-45. But Plaintiff's complaint itself identifies the rational basis. SBA denied Plaintiff's initial claim because it believed Plaintiff was ineligible for SVOG funds. *Id.* ¶¶ 24-25. Plaintiff then waited until after December 31, 2021, to challenge that determination in Court, filing this action in February 2022. *Id.* ¶ 28. As such, the rational basis is plain—SBA did not believe Plaintiff was entitled to benefits, and thus, did not provide Plaintiff those benefits. That Plaintiff disagrees with SBA's decision, and brought this action to challenge it under the APA, does nothing to make irrational SBA's refusal to give Plaintiff benefits when it decided Plaintiff was not entitled to them. To hold otherwise would turn every disputed debt with the United States into a constitutional issue. That is plainly not the law. *See, e.g., Rattler v. Dep't of Health & Hum. Servs.*, Civ. A. No. 12-1427, 2012 WL 3757508, at *1 (D.D.C. Aug. 29, 2012) ("[a]lthough plaintiff complains initially about the alleged denial of his application submitted in 1983 for 'social security benefit[s],' the complaint disintegrates into a variety of unsubstantiated claims[,]" including "violation of plaintiff['s] equal protection right"); *Jones v. Astrue*, Civ. A. No. 12-0946, 2012 WL 2308147, at *1 (D.D.C. June 11, 2012) (dismissing pro se litigant's attempt to bring an equal protection claim based on the denial of social security benefits).

Lastly, to the extent Plaintiff purports to bring a procedural due process claim, Plaintiff fails at the outset to plead what procedures he is entitled to and did not receive. *See, e.g., Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 188 (D.D.C. 2013) (Lamberth, J.) ("to state a procedural due process claim, a plaintiff must plead that a life, liberty, or property interest was at stake, that government action resulted in a deprivation or infringement of that interest, and that the plaintiff did not receive the process he was due"). Indeed, Plaintiff's complaint does the opposite. It recounts the myriad procedures that Plaintiff received from the SBA in considering Plaintiff's

application for SVOG benefits, including SBA's consideration of Plaintiff's initial application (Am. Compl. ¶¶ 23-24), Plaintiff's administrative appeal (*id.* ¶¶ 25-27), and SBA's decision to rescind and reconsider Plaintiff's initial application (*id.* ¶¶ 29-30). Against these allegations, Plaintiff fails to plausibly plead any procedural protection it is due but has not received.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss or, in the alternative enter Summary Judgment for Defendant.


Dated: June 23, 2022
        Washington, DC

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar # 481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Chief, Civil Division

                                        By: /s/ *Stephanie R. Johnson*
                                            STEPHANIE R. JOHNSON
                                            D.C. Bar # 1632338
                                            Assistant United States Attorney
                                            Civil Division
                                            601 D Street, NW
                                            Washington, DC 20530
                                            (202) 252-7874
                                            Stephanie.Johnson5@usdoj.gov

                                        *Attorneys for the United States of America*

- 23 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STAREVENTS, INC.,

       *Plaintiff,*

    v.                       Civil Action No. 22-0380 (JDB)

SMALL BUISNESS ADMINISTRATION,
*et al.*,

       *Defendants*.

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment and the entire record herein, it is hereby

ORDERED that Defendants' Motion is GRANTED, it is further

ORDERED that SUMMARY JUDGMENT is entered for Defendants and against Plaintiff.

SO ORDERED.

_____
Dated

_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STAREVENTS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> SMALL BUISNESS ADMINISTRATION, *et al.,* <br><br> *Defendants*. | Civil Action No. 22-0380 (JDB) |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56(b) and Local Civil Rule 7(h), Defendants respectfully submit this statement of undisputed material facts.

*SVOG Program Background:*

1. Congress established the SVOG program through the Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act, which was later amended by the American Rescue Plan Act. *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/shuttered-venue-operators-grant#section-header-0 ("SBA Shuttered Venue Operators Grant") (last accessed March 23, 2022); P.L. 116-260, The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Division N, Title III of the Consolidated Appropriations Act, 2021, December 27, 2020).

2. The SVOG program is managed under SBA's Office of Disaster Assistance. ("ODA"). 15 U.S.C. § 9000a(b). ODA manages a number of disaster programs, *see* 13 C.F.R. Part 123, however, the SVOG program is a new program that ODA created and implemented essentially from scratch. Since its inception in or about April 2021, the SVOG Program has

awarded approximately $14.23 billion in grants.  *See* SBA Shuttered Venue Operators Grant; *see also* Matthew T. Stevens Declaration ("Stevens Decl.") ¶ 4.

*SVOG Program Implementation and Operation:*

3.      The process to set up and implement this grant program in the midst of a global pandemic, making use of 100% telework staff and staff on loan from other federal agencies, spanned less than 90 days from the organization of the staff to the first date of award issuance.  *Id.* ¶ 5.  Because no comparable program existed at any federal agency, the SVOG program had to integrate guidance from a myriad of resources and refine processes and procedures to continuously improve systems to balance the desire to expedite disbursement of emergency funding to eligible entities against the duty to protect the integrity of SBA and the SVOG program from fraud and misuse of funds.  *Id.*

4.      ODA's staffing resources are limited.  In order to implement the SVOG program, ODA obtained approximately 500 reviewers, borrowed from other federal programs.  *Id.* ¶ 8.  Over the life of the program (from about April 2021) personnel decreased to 180, as the borrowed staff were required to return to their original roles, or to assist in responding to other disasters.  *Id.*  For example, during a peak SVOG processing period, the SVOG program was forced to give up approximately 30 top performing staff members when they returned to their original assignments to perform work responsive to the 2021 hurricanes and wildfires.  *Id.*

5.      The SVOG program began accepting applications on April 23, 2021.  *Id.* ¶ 9.  The first Notices of Award were issued on or about May 27, 2021, and initial processing of applications, with notices of final decisions concluded on or about February 7, 2022.  *Id.*  During this short timeframe, the SVOG program processed approximately 17,637 initial applications for SVOG grants, of which approximately 12,869 were awarded.  *See* "2022 Shuttered Venue

Operators    Grant    program    reports," https://www.sba.gov/sites/default/files/2022-02/SVOG%20Public%20Report%20-%20Midday%2028%20Feb%202022-508.pdf    (Feb.    28, 2022) (last accessed June 23, 2022).

6.      The SVOG application requires applicants to support their answers to eligibility questions with up to 10 documents uploaded per answer.  Stevens Decl. ¶ 10.  Documents include copies of contracts, tax returns for 2019 and 2020, among other things, depending upon the entity type under which the applicant applied. 8

7.      Adding to the complexity of the review, the SVOG statute identifies seven eligible entity types, *see* 15 U.S.C. § 9009a(1)(A), including,

        i.   Live Venue Operator

        ii.  Live Venue Promoter

        iii. Live Performing Arts Organization Operator

        iv.  Theatrical Producer

        v.   Talent Representative

        vi.  Motion Picture Theatre Operator

        vii. Non-Profit Museum Operator

*Id*. ¶ 11.

8.      For each entity type, there are 17-26 eligibility criteria.  For each eligibility criteria, the applicant is asked to upload documentation substantiating their eligibility.  The Applicant may upload as many documents as it chooses.  *Id*. ¶ 12.

9.      Additionally, applicants must self-identify their entity type.  *Id*. ¶ 13.  Where an applicant has not met the eligibility criteria for their selected entity type, however, the SVOG program will evaluate whether the applicant meets the criteria for any other eligible entity type

before making the final award determination. *Id*. Where it is determined that the applicant qualifies as alternate eligible entity type, the applicant is treated as eligible. *Id*.

10.     Beyond the processing of initial applications, an additional five processing streams occur in order to ensure that eligible entities receive the maximum award, including: Appeal, Reconsideration 1.0, Supplemental, Reconsideration 2.0, Reconsideration 2.5. *Id*. ¶ 16.

11.     Each entity that receives an award must then complete Monitoring, Audit, and Closeout ("MAC"), which can last 18 months or longer. *Id*. ¶ 17.

12.     The SVOG program has a staff of approximately 180 which actively manages 400 open evaluations in the formal processing stages which require manual review. *Id*. ¶ 18.

13.     The approximate numbers for the formal processing stages are Appeals (7), Supplemental Awards (3), Reconsideration 1.0 (0), Reconsideration 2.0 (12), and Reconsideration 2.5 (4). *Id*. ¶ 19.

14.     In addition, the SVOG program is also responsible for performing program integrity reviews, including requests for re-evaluations of declined applications from non-formal avenues as well as SBA's General Counsel in connection with complaints that have been filed against the Agency. *Id*. ¶ 20.

15.     The number of re-evaluations for which this special team is responsible has grown significantly over the past several months. *Id*. ¶ 24. For example, since January 2022, the special team was tasked with re-evaluating, at least once per week, requests for application re-evaluation where the applicant named multiple alleged competitors or similar companies that received awards. *Id*. These allegations (inquiries) necessitate review of, on average, 20 - 30 "competitors." *Id*. In recent weeks, the frequency of such inquiries has risen to about 2-3 per week. *Id*.

16.     The amount of work involved in an internal re-evaluation can be significant and can take anywhere from two hours to multiple workdays, depending on the complexity of the application, *e.g.*, affiliate groups or entities with multiple income streams that require a more detailed analysis of whether the Principal Business Activity qualifies under the statute.  *Id*. ¶ 27. The SVOG program office believes that such detailed analysis is necessary when questions arise about the award decision because of SBA's duty to ensure program integrity against misuse or misappropriation of funds.  *Id*. For matters where an applicant has alleged disparate treatment as compared to entities it believes are substantially similar, those entities named by the applicant must also be re-evaluated to ensure that there was not in fact disparate treatment.  These comparative analyses are extremely burdensome, as the process can take a long time with a very small staff to accomplish these tasks.  *Id*.

17.     For example, when one "convention" type business named five awarded entities it alleged were substantially similar, the comparative review and analysis took an SVOG program office staff member approximately 65 working hours to complete the review and analysis.  *Id*. ¶ 28.  Where a comparative review and analysis determines that one of the named entities has been improperly awarded, the Program refers the awardee for inclusion in the Agency's process to recover repayment of improper awards because allowing the improper award to stand would be a misappropriation/misuse of grant funds.  *Id*.

18.     SBA has also created a Program Integrity team, consisting of 6 staff members and has approximately 250-300 applications pending re-evaluations in its queue, including those connected to federal district court litigation.  *Id*. ¶¶ 22, 30, 34.  Since September 2021, approximately 63 federal complaints have been filed in connection with denial of SVOG awards

and there are often court-imposed deadlines associated with this active litigation. *Id*. ¶¶ 22, 30, 34.

19.     The number of these complaints have grown significantly since September 2021, from approximately 7 complaints in or around September 2021, to approximately 14 complaints by the end of November 2021, to approximately 32 complaints by the end of December 2021, to approximately 48 complaints by the end of February 2022, and to approximately 63 complaints as of April 20, 2022. *Id*. ¶ 31.

20.     Initially, the SVOG program office endeavored to give priority consideration to re-evaluations of applications in litigation, due to pending litigation deadlines (not present in other requests), it is no longer able to continue this endeavor given the substantial increase in litigation and other requests for re-evaluations coming from sources such as Congressional inquiries, customer service contacts, etc. *Id*. ¶ 32. Therefore, the Program must consider such re-evaluations on a first-in, first-processed approach, subject to emergencies that may affect SBA's management and administration of the program. *Id*.

21.     Where a litigation deadline is present and an initial assessment does not conclusively indicate that an award is appropriate, a formal re-evaluation and new decision is conducted in accordance with the Program Integrity team's standard queue for evaluations, which takes urgent priorities into consideration, but is generally conducted on a first-in, first-processed basis. *Id*. ¶ 33.

22.     The rescinded application in the case that is the subject of the captioned litigation is subject to the first-in, first-processed approach. *Id*. ¶ 35.

- 6 -

*Plaintiff's Application, SBA's Denial, and Plaintiff's Appeal:*

23.     On April 26, 2021, Plaintiff applied for a SVOG of $ 602,365.50, maintaining that it is a "live venue operator or promoter, theatrical producer, or live performing arts organization operator" that satisfies the requirements for receipt of SVOG funds.  Am. Compl. ¶¶ 22, 23.

24.     SBA denied Plaintiff's application.  *Id*. ¶ 24.

25.     On September 9, 2021, Plaintiff appealed SBA's determination.  *Id*. ¶ 25.

26.     On November 8, 2021, SBA denied Plaintiff's appeal because StarEvents did not meet the principal business activity standard and thus StarEvents was ineligible.  *Id*. ¶ 27.

27.     On May 13, 2022, SBA rescinded its challenged decision.  *Id*. ¶ 29.

Dated:  June 23, 2022
        Washington, DC

                              Respectfully submitted,

                              MATTHEW M. GRAVES, D.C. Bar # 481052
                              United States Attorney

                              BRIAN P. HUDAK
                              Chief, Civil Division

                              By:  /s/ *Stephanie R. Johnson*
                                 STEPHANIE R. JOHNSON
                                 D.C. Bar # 1632338
                                 Assistant United States Attorney
                                 Civil Division
                                 601 D Street, NW
                                 Washington, DC 20530
                                 (202) 252-7874
                                 Stephanie.Johnson5@usdoj.gov

                              *Attorneys for the United States of America*

- 7 -